COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Coleman and Overton
Argued at Salem, Virginia


GERALD LEONARD CUMMINGS

v.        Record No.  2645-94-3        MEMORANDUM OPINION*
                                       BY JUDGE JOSEPH E. BAKER
PAMELA GREENWOOD CUMMINGS              FEBRUARY 6, 1996


FROM THE CIRCUIT COURT OF ROANOKE COUNTY
G. O. Clemens, Judge

Arthur E. Smith (Barry M. Tatel; Key & Tatel,
on briefs), for appellant.

K. Mike Fleenor, Jr. (T. Rodman Layman; Crowell,
Nuckols, Layman & Aust, on brief), for appellee.


        Gerald Leonard Cummings (husband) appeals from equitable
distribution-related awards made in favor of Pamela Kay Greenwood
Cummings (wife) by the Circuit Court of Roanoke County (trial
court) following the entry of a divorce decree entered on May 5,
1993.  The parties married on June 10, 1989 and separated two
years later on June 19, 1991.  On July 30, 1991, husband filed a
bill of complaint charging that wife constructively deserted him
on June 19, 1991.  Wife denied the charge and filed a cross-bill
challenging, among other things, the validity of an antenuptial
agreement they had executed.

        On May 5, 1993, the court granted wife a decree of divorce
on the ground of desertion.  That decree specifically reserved
other issues for future determination, including equitable

───────────────
        *Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

distribution. In this appeal, husband does not contest the decree awarding the divorce to wife.

Pursuant to the order bifurcating the suit, a second trial was conducted on the issues of the validity of the antenuptial agreement,[1] maintenance and support, division of marital property and the other matters pending between the parties. Husband appeals from marital awards made by the trial court, including an award of attorney's fees. Wife cross-appealed, asserting that she is entitled to additional attorney's fees for defending this appeal.

The controversy primarily concerns three pieces of real property known as Club Lane (Club), Peregrine Crest (Peregrine), and Stanley Avenue (Stanley). Club and Peregrine were owned solely by husband prior to the marriage. Stanley was acquired during the parties' marriage.

On December 1, 1994, the trial court entered a decree making the following findings and awards:

1. That during the marriage wife made significant personal efforts toward improving all three properties which increased their value.

2. That wife's efforts were greater than husband's; therefore, "she is credited with ninety percent (90%) of the [appreciation in] value of" Peregrine and Club.

_____

[1] The issue of the validity of the antenuptial agreement was tried and by order entered June 28, 1994, the court declared the contract valid. That decision is not contested in this appeal.

3.   That the value of Peregrine and Club increased $100,000 and $25,000, respectively.

4.   That wife's share from Stanley, being a subject of an antenuptial agreement, is $9,300.

5.   That wife's gross ninety percent award of equitable distribution is $121,800.

The court then reduced this award by the following sums:

(a)   $4,400, received by wife from the sale of a Steinway piano;

(b)   $5,860, real estate commission received by wife;

(c)   $15,000, awarded wife in an order entered November 12, 1991.  That order does not state the reason for the award but does indicate that it shall be "an offset" against any equitable distribution award; and

(d)   $1,000, sum paid by husband to satisfy a debt of wife. After deducting the above sums from the $121,800 award, the decree found the final net sum husband was to pay to wife "to be ninety-five thousand, five hundred forty ($95,540)" plus $35,000 for attorney's fees.

## I. Peregrine

Husband held Peregrine as investment property.  A house was constructed on it and it was sold to an owner who was unable to complete his obligation to husband.  Peregrine was reconveyed to husband in the latter part of 1988, before the marriage, and immediately listed for sale with Cumins & Co. (Cumins), real

estate brokers. At that time, wife was employed by Cumins.

Peregrine needed extensive renovation and, prior to the parties' marriage, wife agreed to supervise the renovation. They agreed that she would receive $20,000 for her efforts. She was advanced $3,000 toward that fee when the project began.

Wife conferred with a Roanoke contractor, Joel Schlanger. Wife and Schlanger worked up specifications and eventually a contract was signed by husband and Schlanger to renovate the property to satisfy the subdivision standards. The final contract was for $88,646.06, which was paid to Schlanger by husband on May 18, 1989. Wife testified that the renovation of the property was ongoing at the time of the parties' marriage, and that she continued to oversee the renovation of the interior for another six months after their marriage. When the renovation was completed, the now married parties moved into the Peregrine Crest property in January or February of 1990.

At trial, husband's appraiser testified that from June 10, 1989 to June 19, 1991 the Peregrine property had increased in value $10,000, which amount was due to normal upkeep and market changes. Wife testified that her efforts had caused the value of Peregrine to increase substantially more. The trial court found that the value of Peregrine increased $100,000 due to the marital efforts of the parties.

Husband contends that to the extent wife's efforts may have increased the value of Peregrine, they were not marital but

rather were the services of a real estate agent that were fixed by contract and, thus, were contractual obligations. We agree. Prior to their marriage the parties entered into a contract for wife to supervise the renovation of Peregrine for which she was to receive $20,000. Part of that consideration was paid in advance. The parties' subsequent marriage did not void the terms of their contract. Wife was entitled to the fee of $20,000 and no more from husband's separate property. The trial court erred when it found that wife was entitled to receive an award from husband's separate property based upon the increased value resulting from her "marital efforts."

## II. Club

Club, also, was the separate property of husband, acquired in his sole name prior to his marriage. When husband decided to sell Club, wife agreed to act as general contractor for the purpose of preparing the property for sale. She would employ the workmen, and husband would pay all costs related to the work. Wife agreed that in payment for her contribution, she would receive an exclusive listing through her broker, which would entitle her to receive a commission when the property was sold.

The cost of preparing Club was $17,000, all paid by husband. Club was sold by contract dated January 18, 1990; however, the closing was delayed until May 31, 1990, when the buyer paid $295,000 to husband; wife was paid $5,900 as her commission. Husband's appraiser testified that Club was valued at $295,000 on

the date of the parties' marriage and on January 18, 1990, which was the price at which the property had sold. Wife valued Club at $153,000 before the $17,000 was spent to ready the house for sale. The court found that the value of Club increased $25,000 due to the marital efforts of the parties.

The parties' exclusive listing was not dissolved by their marriage and wife was paid the sum the agreement defined her interest to be. Wife's contributions to husband's separate property were contractual, not marital. The trial court erred when it found that wife was entitled to receive an award based upon the increase in value, if any, resulting from her marital efforts.

### III. Stanley

In February 1990, at wife's suggestion, husband agreed to buy Stanley for $159,500. Wife was paid a commission of $3,400 for selling the property to husband. There was some discussion that the parties would live at Stanley after extensive renovation, but, for differences of opinion and some objections, that notion was abandoned. Wife then employed an attorney to prepare a contract setting forth their respective rights and obligations on the Stanley project, which she and husband executed. The contract required that husband would furnish the money to pay for the renovation, which was estimated to cost $70,000, and that wife would be in charge of construction and have the exclusive right to sell the property. Upon the sale of

the property, the contract provided that wife would receive any amount received in excess of the principal amount of the home equity line of credit on the house. Husband deposited money into a joint account with the agreement that wife would draw upon the funds and keep account of actual costs by marking the checks for the Stanley renovation. At completion of the project, those checks totaled $171,293; however, wife disputed the accuracy of the audit, estimated the costs at $100,000, and testified that husband agreed to pay whatever the improvements cost.

The house was being offered for sale by wife pursuant to the terms of their agreement when the separation of the parties occurred on June 19, 1991. Thereafter, husband filed for divorce. Under Code § 20-103, wife was permitted to use Peregrine and husband moved to Stanley. Husband then offered Stanley for sale through Mastin Realty Company, whose agent, in what the court declared to be an arm's length sale, found a buyer for $240,000, which after commissions, netted husband $226,841.39. At the time of sale, the principal due on the home equity line of credit was $230,700. As a result of this sale and the terms of the contract entered into prior to their separation, we cannot say that the trial court erred when it awarded wife $9,300 from the sum received by husband from the sale of Stanley.

### IV. Waste

Husband further contends that the trial court erred in rejecting his allegations of waste. In addition, he asserts that

the awards were made by the trial court as a form of punishment to husband. The decision of the trial court on the issue of waste is within its discretion and we find no abuse in that decision. Nor do we find evidence in this record to support husband's "punishment" assertion. Husband has not sustained his burden to support either allegation.

### V. Attorney's Fees

As the final argument was about to begin, the trial court observed:

> You all haven't said one thing about asking for attorneys [sic] fees. You have presented nothing on attorneys [sic] fees.

Notwithstanding that little response was made to that observation, the trial court ordered husband to pay wife $35,000 for attorney's fees. Husband contends that this record does not contain evidence to support that award. We agree. Although the matter of attorney's fees is generally within the sound discretion of the trial court, the record must justify the sum awarded. Westbrook v. Westbrook, 5 Va. App. 446, 458, 364 S.E.2d 523, 530 (1988) (citing Robertson v. Robertson, 215 Va. 425, 429–30, 211 S.E.2d 41, 45 (1975)). While factors other than time expended may be considered in awarding a fee, see McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985), without any evidence of the time expended, we find no support in the record to justify requiring husband to pay $35,000 to wife as attorney's fees.

Because husband substantially prevails in this appeal, wife's request for attorney's fees for the appeal is denied.

## VI. Conclusion

In summary, we hold that Peregrine and Club are separate properties of husband and that wife is entitled to receive only that compensation for which she contracted; that the judgment relating to Stanley is affirmed subject to any offset that may be applicable; that the trial court did not err in rejecting husband's claim for waste; that husband has failed to show that any decision adverse to his interest was made to punish him; that the record fails to support the award of $35,000 in attorney's fees in wife's favor; and that wife is not entitled to any award of attorney's fees for services rendered on her behalf in this appeal.

Accordingly, the judgment of the trial court is affirmed in part, reversed in part and remanded. Our judgment with respect to the Peregrine, Club, and Stanley properties is final, and upon remand the trial court shall enter an award in accordance therewith, taking into consideration any and all appropriate deductions. Additionally, the trial court may deal with any and all other matters necessary to a proper adjudication of the case.

<u>Affirmed in part,</u>
<u>reversed in part and remanded.</u>